FILED
CLERK, U.S. DISTRICT COURT
12/21/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: JB DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARCO ANTONIO SANTILLAN VALENCIA,
ANTHONY MARMOLEJO AGUILAR,
MARCO SANTILLAN, JR.,
MICHAEL DIAZ,
LUIS DE ARCOS, and
RAFAEL MAGALLON CASTILLO,

Defendants.

CR 2:21-cr-00588-JFW

I N D I C T M E N T

[50 U.S.C. §§ 4819(a), (b): Conspiracy to Violate the Export Administration Regulations; 18 U.S.C. § 554: Attempted Smuggling of Goods Out of the United States and Facilitating the Transportation, Concealment, or Sale of Goods Prior to Exportation; 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition; 50 U.S.C. § 4819(d), 18 U.S.C. §§ 924, 981(a)(1)(C), and 982, and 28 U.S.C. § 2461(c): Criminal Forfeiture]

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. The Export Control Reform Act of 2018 ("ECRA") provides, among its stated policy objectives, that "the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specific activities

of United States persons, wherever located, be controlled . . . ." 50 U.S.C. § 4811. To that end, ECRA grants the President the authority "(1) to control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. 50 U.S.C. § 4812. ECRA further grants the Secretary of Commerce the authority to establish the applicable regulatory framework.

2. Pursuant to that authority, the Department of Commerce ("DOC") reviews and controls the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774. In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR impose licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully re-exported from one foreign destination to another.

3. The most sensitive items subject to EAR controls are identified on the Commerce Control List, or "CCL," published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by Export Control Classification Number ("ECCN"), each of which has export control requirements depending on destination, end use, and end user.

4. Pursuant to ECRA, "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a

violation of this part or of any regulation, order, license, or other authorization issued under this part," and, "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) shall" be guilty of a crime. 50 U.S.C. § 4819.

5. The following items were seized on or about the dates listed below and were dual-use commercial goods controlled by the CCL for reasons of Firearms Convention, National Security, and Regional Stability, and all required a license for export to Mexico:

| DUAL-USE ITEM | DATE(S) SEIZED |
|---|---|
| .223 ammunition, various manufacturers | 7/31/20<br>11/5/20 |
| .300 AAC blackout ammunition manufactured by Arms Corporation of the Philippines ("Armscor") | 7/31/20 |
| .300 blackout ammunition manufactured by Armscor | 7/31/20 |
| GPR 5.56/.223 Rifle manufactured by WarSport | 9/10/20 |
| DD5 V4, 7.62X 51MM Rifle manufactured by Daniel Defense | 9/10/20 |
| FNAR 10-Round .308 Winchester Magazine manufactured by FN America | 9/10/20<br>9/11/20 |
| .22 caliber ammunition manufactured by Armscor | 9/10/20 |
| PMAG 20LR/SR Gen 3, .308 Winchester magazine manufactured by Magpul | 9/10/20<br>9/11/20 |
| Three SCAR 20S Rifles manufactured by FN | 9/11/20 |
| PMAG 30 AR/M4 GEN ML; 5.56/.223 caliber magazine manufactured by Magpul | 9/11/20 |

| DUAL-USE ITEM | DATE(S) SEIZED |
|---|---|
| SIG716 G2 rifle manufactured by Sig Sauer | 9/11/20 |
| .50 caliber magazine manufactured by Barrett | 9/11/20 |
| Twenty AR-15 lower receivers manufactured by Anderson Manufacturing | 1/8/21 |
| Twenty AR-15 MIL SPEC TRIGGER KITs manufactured by CMMG | 1/8/21 |
| 8mm ammunition manufactured by Sellier & Bellot | 1/8/21 |
| 7.62x39mm ammunition | 1/11/21<br>1/20/21 |
| M249 Operating Rod Assembly manufactured by FN | 1/20/21 |

6. At no time did defendants MARCO ANTONIO SANTILLAN VALENCIA ("SANTILLAN"), ANTHONY MARMOLEJO AGUILAR, MARCO SANTILLAN, JR. ("SANTILLAN JR."), MICHAEL DIAZ, LUIS DE ARCOS, and RAFAEL MAGALLON CASTILLO, or anyone else known to the Grand Jury, apply for, receive, or possess a license to export any of the items listed above from the United States.

7. The Grand Jury incorporates these Introductory Allegations into each count of this Indictment.

COUNT ONE

[50 U.S.C. §§ 4819(a), (b);

15 C.F.R. §§ 736.2 and 764.2, and parts 738 and 742]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on or before March 2020, and continuing until on or about February 24, 2021, in Los Angeles, Orange, Riverside, San Bernardino, Santa Barbara, and Ventura Counties, within the Central District of California, and elsewhere, defendants MARCO ANTONIO SANTILLAN VALENCIA ("SANTILLAN"), ANTHONY MARMOLEJO AGUILAR, MARCO SANTILLAN, JR. ("SANTILLAN JR."), MICHAEL DIAZ, LUIS DE ARCOS, and RAFAEL MAGALLON CASTILLO, and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed to:

1.   Solicit the export of, attempt to export, cause others to export, and aid, abet, counsel, command, and induce the export from the United States to Mexico of, items controlled on the CCL, without first having obtained a license or authorization from the Department of Commerce to do so, as required by the EAR, in violation of Title 18, United States Code, Section 4819(a)(2); and

2.   Engage in transactions and take other actions with the intent to evade the provisions of the EAR, in violation of Title 18, United States Code, Section 4819(a)(2).

B.   THE MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.   Defendant SANTILLAN would agree to obtain dual-use items and other similar goods in the United States to be transported to

Mexico on behalf of co-conspirators, including members of the Mexico-based Cartel Jalisco Nuevo Generacion ("CJNG") drug cartel.

2. Using funds in the United States that had been provided by co-conspirators in Mexico to defendant SANTILLAN, defendants MARMOLEJO and SANTILLAN JR. would purchase dual-use items and other similar goods in the United States on behalf of defendant SANTILLAN to be transported to Mexico.

3. Defendants MARMOLEJO, SANTILLAN JR., and DIAZ would transport dual-use items and other similar goods that had been purchased in the United States to Whittier, California, where defendant SANTILLAN would arrange for such items to be further transported to Mexico.

4. Defendants DE ARCOS and MAGALLON, as well as other co-conspirators, would pick up dual-use items and other goods in Whittier, California, and elsewhere, and transport those dual-use items and other similar goods to Mexico.

E. OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants SANTILLAN, MARMOLEJO, SANTILLAN JR., DIAZ, DE ARCOS, and MAGALLON, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles, Orange, Riverside, San Bernardino, Santa Barbara, and Ventura Counties, within the Central District of California, and elsewhere, including, but not limited to, the following:

1. On or about March 6, 2020, in text messages using coded language, defendants SANTILLAN and SANTILLAN JR. discussed obtaining firearms from individuals in Nevada and Oregon.

2.    On or about March 21, 2020, in text messages using coded language, defendants SANTILLAN and SANTILLAN JR. discussed transporting firearms and firearms parts to Mexico, which, according to defendant SANTILLAN, was complicated by the recent temporary closure of the United States-Mexico border.

3.    On or about March 22, 2020, in text messages using coded language, defendant SANTILLAN JR. informed defendant SANTILLAN that he had arrived in Nevada and was thirty minutes away from defendant SANTILLAN JR.'s residence located on Vicki Ann Road in Pahrump, Nevada (the "Vicki Ann Address") and that he had counted approximately 16 firearms.

4.    On or about April 5, 2020, in a text message using coded language, defendant SANTILLAN asked defendant SANTILLAN JR. to send defendant SANTILLAN photographs of firearms that defendant SANTILLAN JR. had obtained on behalf of defendant SANTILLAN to be transported to Mexico.

5.    On or about April 5 and 6, 2020, in multiple text messages, defendant SANTILLAN JR. sent defendant SANTILLAN photographs depicting rifles, handguns, and rifle magazines that defendants SANTILLAN and SANTILLAN JR. intended to have transported to Mexico.

6.    On or about April 9, 2020, in text messages using coded language, defendant SANTILLAN JR. informed defendant SANTILLAN that he had obtained ammunition to be transported to Mexico, and that defendant SANTILLAN JR. would be delivering the ammunition to defendant DE ARCOS the following day.

7.    On or about April 9, 2020, in text messages using coded language, defendant SANTILLAN asked defendant SANTILLAN JR. if defendant SANTILLAN JR. had the telephone number for defendant DE

ARCOS, and defendants SANTILLAN and SANTILLAN JR. discussed the best route to take from the United States to Mexico.

8. On May 23, 2020, in a text message using coded language, defendant SANTILLAN asked defendant SANTILLAN JR. for an update on defendant SANTILLAN JR.'s attempt to obtain Fiocchi ammunition on behalf of co-conspirators.

9. On May 24, 2020, in a text message using coded language, defendant SANTILLAN JR. informed defendant SANTILLAN that ammunition would be shipped the following day.

10. On May 24, 2020, in a text message using coded language, defendant SANTILLAN instructed defendant SANTILLAN JR. to obtain a magazine for an AR-15-type rifle on behalf of co-conspirators.

11. On May 24, 2020, in a text message using coded language, defendant SANTILLAN JR. informed defendant SANTILLAN that he would be shopping for assault rifle magazines the following day, but that most stores would be closed for Memorial Day.

12. On May 26, 2020, in multiple Facebook messages, defendant SANTILLAN JR. sent several videos, including one video depicting approximately 28 rifles, one video depicting approximately 21 rifles and multiple rifle magazines, and a third video depicting defendant SANTILLAN JR. holding a rifle, to another individual and, using coded language, informed the individual that defendant SANTILLAN JR. was providing the firearms and parts depicted in the videos to Mexico.

13. On May 26, 2020, in a Facebook message using coded language, defendant SANTILLAN JR. informed another individual that members of "Mencho's cartel" – referring to the CJNG – "are buying everything" – referring to firearms and firearms parts.

14. On May 26, 2020, in a Facebook message using coded language, defendant SANTILLAN JR. sent a video to another individual depicting defendant SANTILLAN JR. holding a fanned stack of $100 bills, and informed the individual that defendant SANTILLAN JR.'s sale of firearms to the CJNG was profitable.

15. On May 27, 2020, in text messages using coded language, defendant SANTILLAN instructed defendant SANTILLAN JR. to attempt to obtain magazines and other firearms parts, including a "M249 firing pin," referring to a firing pin for an M249 light machine gun, a dual-use item.

16. On June 2, 2020, in a text message using coded language, defendant SANTILLAN informed defendant SANTILLAN JR. that he was using a new telephone and instructed defendant SANTILLAN JR. to "always have 2" telephones.

17. On June 2, 2020, in a text message using coded language, defendant SANTILLAN asked defendant SANTILLAN JR. for an update regarding defendant SANTILLAN's May 27, 2020, instruction that defendant SANTILLAN JR. purchase magazines and other firearms parts.

18. On June 19, 2020, in text messages using coded language, defendants SANTILLAN and SANTILLAN JR. discussed reimbursing a co-conspirator who had purchased a Barrett .50 caliber rifle on behalf of defendants SANTILLAN and SANTILLAN JR.

19. On July 13, 2020, in Facebook messages, defendant SANTILLAN JR. sent multiple videos and photographs depicting firearms including multiple .50 caliber Barrett rifles and FN-SCAR rifles, firearms parts, and ammunition to another individual and, using coded language, informed the individual that the ammunition consisted of .50 caliber armor piercing incendiary bullets.

20.  On July 22, 2020, in multiple text messages using coded language, defendant SANTILLAN and a co-conspirator set up an in-person meeting with each other and explained that they would be in the "same" vehicles.

21.  On July 22, 2020, at a shopping center parking lot in Corona, California, defendants SANTILLAN and MARMOLEJO met with a co-conspirator and accepted a black bag from the co-conspirator; shortly thereafter, defendants SANTILLAN and MARMOLEJO purchased firearms, firearms parts, firearms accessories, and/or ammunition to be transported to Mexico.

22.  On July 23, 2020, defendant MARMOLEJO purchased approximately $19,460 of ammunition from an ammunition store in Phoenix, Arizona, including approximately 2,400 rounds of .50 caliber armor piercing incendiary ammunition and 21,000 rounds of .223 caliber ammunition, to be transported to Mexico.

23.  On July 23, 2020, in a telephone conversation using coded language, defendant MARMOLEJO informed defendant SANTILLAN that defendant MARMOLEJO was attempting to purchase .308 Winchester ammunition but the ammunition store at which he was attempting to purchase the ammunition did not have such ammunition available.

24.  On July 23, 2020, defendant MARMOLEJO transported ammunition he had purchased in Phoenix, Arizona to the Vicki Ann Address in Pahrump, Nevada.

25.  On July 23, 2020, at the Vicki Ann Address, defendants MARMOLEJO and SANTILLAN JR. unloaded the ammunition defendant MARMOLEJO had purchased in Phoenix, Arizona.

26.  On July 29, 2020, defendants SANTILLAN and MARMOLEJO traveled from the Central District of California to the Vicki Ann

Address, where defendants SANTILLAN, MARMOLEJO, SANTILLAN JR., and DIAZ packaged ammunition inside boxes and vacuum-sealed bags for further transport.

27. On July 30, 2020, defendants MARMOLEJO, SANTILLAN JR., and DIAZ purchased approximately 5,200 rounds of .50 caliber armor piercing incendiary ammunition from an ammunition store in Phoenix, Arizona, for approximately $17,506.32, which defendant MARMOLEJO paid for in cash.

28. On July 31, 2020, in text messages using coded language, defendants SANTILLAN and MARMOLEJO discussed packaging ammunition in a van at the Vicki Ann Address and transporting the ammunition to defendant SANTILLAN's residence on Foxley Drive in Whittier, California (the "Foxley Address").

29. On July 31, 2020, in a text message using coded language, defendant SANTILLAN informed defendant MARMOLEJO that defendant SANTILLAN was planning to install subwoofer boxes in his vehicle in order to smuggle contraband items.

30. On July 31, 2020, defendants MARMOLEJO, SANTILLAN JR., and DIAZ loaded ammunition into a van at the Vicki Ann Address and were stopped by law enforcement in San Bernardino County while attempting to transport the ammunition to Whittier, California.

31. On July 31, 2020, in San Bernardino County, defendants MARMOLEJO, SANTILLAN JR., and DIAZ possessed the following items:

a. Approximately 49,400 rounds of .223 Remington caliber ammunition manufactured by Wolf;

b. Approximately 14,000 rounds of .223 Remington caliber ammunition manufactured by Giulio Fiocchi;

c. Approximately 1,000 rounds of .300 Blackout caliber ammunition manufactured by Arms Coproation of the Philippines ("Armscor");

d. Various firearms parts and accessories, including two Trijicon ACOG scopes, approximately 20 50-round ammunition belts, approximately 20 steel high-capacity magazines; and

e. Approximately $52,471 in United States currency and approximately 10 United States Postal Service Money Orders each in the value of $1,000.

32. On July 31, 2020, in Pahrump, Nevada, defendant SANTILLAN JR. possessed the following items:

a. Approximately 34,920 rounds of .223 Remington caliber ammunition manufactured by Wolf;

b. Approximately 1,000 rounds of .300 Blackout caliber ammunition manufactured by Armscor;

c. Approximately 10,210 rounds of .50 BMG caliber ammunition manufactured by Lake City Army Ammunition Plant;

d. Approximately 7,520 rounds of .223 Remington caliber ammunition manufactured by Lake City Army Ammunition Plant;

e. Approximately 2,000 rounds of .223 Remington caliber ammunition manufactured by Poongsan Corporation;

f. Over 2,800 rounds of various assorted ammunition, including 9mm Luger caliber ammunition, .38 Special ammunition, .44 Remington Magnum ammunition, .380 Auto ammunition, .22 WMR ammunition, and .308 Winchester caliber ammunition;

g. Firearms parts and accessories including .50 BMG caliber ammunition links and assorted firearms magazines.

33. On August 5, 2020, in a telephone conversation using coded language, defendants SANTILLAN and MARMOLEJO discussed the seizure of ammunition and other property by law enforcement on July 31, 2020, and defendant SANTILLAN instructed defendant MARMOLEJO to contact the Sheriff's Department to inquire about the seized property.

34. On August 5, 2020, in a telephone conversation using coded language, defendant MARMOLEJO informed defendant SANTILLAN that defendant MARMOLEJO had contacted law enforcement and was unable to recover funds that had been seized, to which defendant SANTILLAN responded that law enforcement "took all our cash."

35. On or about August 21, 2020, in a telephone conversation using coded language, defendant SANTILLAN and a co-conspirator discussed transporting drugs and firearms between Mexico and the United States.

36. On or about August 21, 2020, in a telephone conversation using coded language, defendant SANTILLAN and a co-conspirator discussed bulk cash drug proceeds that the co-conspirator had transported to defendant SANTILLAN, discussed a discrepancy in the amount of bulk cash drug proceeds transported, and discussed the manner in which the co-conspirator had sealed the cash inside a Ziploc bag.

37. On or about August 31, 2020, at a United States Postal Service Office in Whittier, California, defendant MARMOLEJO obtained three money orders totaling approximately $2,333 that he used to purchase telescopic rifle sights from a weapons accessories store in Lincoln, Nebraska, which defendant MARMOLEJO intended to be transported to Mexico.

38. On September 3, 2020, in a telephone conversation, defendant MARMOLEJO spoke with an employee for a weapons accessories store based in Lincoln, Nebraska to confirm the shipping address of telescopic rifle sights that defendant MARMOLEJO had purchased.

39. On September 9, 2020, defendant MARMOLEJO traveled to Midway City, California, and transported telescopic rifle sights to defendant DE ARCOS so that defendant DE ARCOS could transport the telescopic rifle sights to Mexico.

40. On September 10, 2020, at the Otay Mesa Port of Entry, defendant DE ARCOS possessed the following items that he was attempting to transport from the United States to Mexico on behalf of defendant MARMOLEJO:

a. One Daniel Defense model DD5 V4, 7.62 caliber rifle with an obliterated serial number;

b. One War Sport Industries model GPR, 5.56mm/.223 caliber rifle with an obliterated serial number;

c. Approximately 44 rounds of .22 caliber ammunition manufactured by Armscor;

d. One P-mag 7.62mm caliber black magazine;

e. Two FNH 7.62mm caliber 10-round magazines;

f. .357 Magnum caliber ammunition manufactured by Hornady Manufacturing Company;

g. .38 Special caliber ammunition manufactured by Federal Cartridge Company;

h. .357 Magnum caliber ammunition manufactured by Remington Arms Company;

i. .357 Magnum caliber ammunition manufactured by Federal Cartridge Company;

j. 9mm Luger caliber ammunition manufactured by Remington Arms Company;

k. 9mm Luger caliber ammunition manufactured by CCI/Speer;

l. .22 caliber ammunition manufactured by CCI/Speer;

m. 12 gauge ammunition manufactured by Federal Cartridge Company;

n. 12 gauge ammunition manufactured by Winchester;

o. 12 gauge ammunition manufactured by Winchester;

p. Firearms parts and accessories including a magazine and optic sights/lenses; and

q. Approximately $10,320 in United States currency.

41. On September 11, 2020, at a residence in Midway City, California, defendant DE ARCOS possessed the following items, which he intended to transport to Mexico on behalf of defendants SANTILLAN and MARMOLEJO:

a. One Sig Sauer model SIG 716-G2, 6.5mm Creedmoor caliber rifle with an obliterated serial number;

b. Three FN America Model SCAR 20S, 7.62mm caliber rifles with obliterated serial numbers; and

c. Several magazines including two .50 caliber magazines, one 5.56mm caliber P-mag magazine, three tri-colored magazines, one Caltech 7.62mm caliber black magazine, and one black P-mag 7.62mm caliber 10-round magazine.

42. On November 4, 2020, defendant SANTILLAN and a co-conspirator made multiple trips from a storage unit in Whittier, California to the Foxley Address, and transported several boxes and plastic bins between the two locations.

43. On November 5, 2020, defendants SANTILLAN and MAGALLON loaded firearms parts and ammunition into a trailer at the Whittier, California residence of defendant SANTILLAN so that defendant MAGALLON could later transport those items to Mexico.

44. On November 6, 2020, in a trailer in Westlake Village, California, defendant MAGALLON possessed the following items, which he ultimately intended to transport to Mexico on behalf of defendant SANTILLAN:

      a.   Approximately 77,000 rounds of .223 ammunition;

      b.   Approximately 300 rounds of .50 caliber armor-piercing incendiary ammunition; and

      c.   Firearms parts and accessories including approximately twelve Trijicon ACOG rifle scopes and one mini-gun housing unit.

45. On November 18, 2020, defendants SANTILLAN and MAGALLON traveled from the Foxley Address to a storage unit in Whittier, California, and loaded several boxes from the storage unit into a trailer.

46. On January 8, 2021, defendant MARMOLEJO possessed the following items inside a minivan in Whittier, California, which he intended to transport to Mexico or cause to be transported to Mexico:

      a.   Approximately 3,400 rounds of 7.62x51mm caliber ammunition;

      b.   One mini-gun housing part;

      c.   One box of 20 rifle lower receivers;

      d.   One box of 20 rifle trigger kits; and

      e.   One box of 50 rifle carry handles with rear sights.

47. On January 8, 2021, defendants SANTILLAN and MARMOLEJO possessed the following items inside a storage unit in Whittier, California, which they intended to transport to Mexico or cause to be transported to Mexico:

    a. Approximately 10,000 rounds of 8mm Mauser caliber rifle ammunition bearing World War II era German factory markings;

    b. Approximately 6,600 rounds of 7.62x51mm caliber ammunition; and

    c. Approximately 398 rifle magazines.

48. On January 11, 2021, at the Vicki Ann Address, defendant SANTILLAN JR. possessed approximately 20,000 rounds of 7.62x39mm caliber ammunition, which defendants SANTILLAN, MARMOLEJO, and SANTILLAN JR. intended to transport to Mexico.

49. On January 20, 2021, at the Foxley Address, defendant SANTILLAN possessed approximately 20,000 rounds of 7.62x39mm caliber ammunition, an Operating Rod Assembly for an M249 light machine gun, and various firearms parts and accessories, which defendant SANTILLAN intended to transport to Mexico, and approximately $20,000 in suspected drug proceeds to be used to purchase firearms, firearms parts, firearms accessories, and ammunition to be transported to Mexico.

COUNTS TWO THROUGH TWENTY

[18 U.S.C. §§ 554, 2]

[DEFENDANTS SANTILLAN, MARMOLEJO, SANTILLAN JR., DIAZ, and DE ARCOS]

On or about the following dates, in Los Angeles, Orange, Riverside, San Bernardino, Santa Barbara, and Ventura Counties, within the Central District of California, and elsewhere, defendants MARCO ANTONIO SANTILLAN VALENCIA ("SANTILLAN"), ANTHONY MARMOLEJO AGUILAR, MARCO SANTILLAN, JR. ("SANTILLAN JR."), MICHAEL DIAZ, and LUIS DE ARCOS knowingly attempted to export and send from the United States certain commodities, contrary to law and regulation of the United States, and facilitated the transportation, concealment, and sale of said commodities, prior to exportation, knowing the same to be intended for exportation contrary to law and regulation of the United States, specifically, Title 50, United States Code, Section 4819.

Specifically, the defendants listed below bought, attempted to buy, and arranged for shipment the following items, and aided and abetted, counseled, commanded, induced, and procured others to do so, all the while believing that these items would be exported from the United States contrary to law and regulations of the United States, specifically, Title 50, United States Code, Section 4819, because defendants had not applied for nor obtained the necessary export license from the Department of Commerce for each such item:

| COUNT | DEFENDANT(S) | DATE | DUAL-USE ITEM(S) |
|---|---|---|---|
| TWO | SANTILLAN; MARMOLEJO; DIAZ; SANTILLAN JR. | 7/31/20 | Approximately 49,400 rounds of .223 ammunition manufactured by Wolf |
| THREE | SANTILLAN; MARMOLEJO; DIAZ; SANTILLAN JR. | 7/31/20 | Approximately 14,000 rounds of .223 ammunition manufactured by Fiocchi |
| FOUR | SANTILLAN; MARMOLEJO; DIAZ; SANTILLAN JR. | 7/31/20 | Approximately 1,000 rounds of .300 Blackout caliber ammunition manufactured by Armscor |
| FIVE | DE ARCOS | 9/10/20 | DD5 V4, 7.62X51MM Rifle manufactured by Daniel Defense |
| SIX | DE ARCOS | 9/10/20 | GPR 5.56/.223 Rifle manufactured by WarSport |
| SEVEN | SANTILLAN; DE ARCOS | 9/10/20 | .22 caliber ammunition manufactured by Armscor |
| EIGHT | SANTILLAN; DE ARCOS | 9/10/20 | PMAG 20LR/SR Gen 3, .308 Winchester magazine manufactured by Magpul |
| NINE | SANTILLAN; DE ARCOS | 9/10/20 | Two FNAR 10-Round .308 Winchester magazines manufactured by FN America |
| TEN | DE ARCOS | 9/11/20 | SIG716 G2 rifle manufactured by Sig Sauer |

| COUNT | DEFENDANT(S) | DATE | DUAL-USE ITEM(S) |
|---|---|---|---|
| ELEVEN | DE ARCOS | 9/11/20 | Three SCAR 20S Rifles manufactured by FN America |
| TWELVE | SANTILLAN; DE ARCOS | 9/11/20 | One .308 Winchester magazine manufactured by Kel-Tec |
| THIRTEEN | SANTILLAN; DE ARCOS | 9/11/20 | One 10-Round .308 Winchester magazine manufactured by Magpul |
| FOURTEEN | SANTILLAN; DE ARCOS | 9/11/20 | Two .50 caliber magazines manufactured by Barrett |
| FIFTEEN | SANTILLAN; DE ARCOS | 9/11/20 | PMAG 30 AR/M4 GEN ML 5.56/.223 caliber magazine manufactured by Magpul |
| SIXTEEN | SANTILLAN; MARMOLEJO | 1/8/21 | Approximately twenty AR-15 lower receivers manufactured by Anderson Manufacturing |
| SEVENTEEN | SANTILLAN; MARMOLEJO | 1/8/21 | Approximately twenty AR-15 MIL SPEC TRIGGER KITs manufactured by CMMG |
| EIGHTEEN | SANTILLAN; MARMOLEJO | 1/8/21 | Approximately 10,000 rounds of 8mm ammunition manufactured by Sellier & Bellot |
| NINETEEN | SANTILLAN | 1/20/21 | M249 Operating Rod Assembly manufactured by FN America |

| COUNT | DEFENDANT(S) | DATE | DUAL-USE ITEM(S) |
| --- | --- | --- | --- |
| TWENTY | SANTILLAN | 1/20/21 | Approximately 20,000 rounds of 7.62x39mm ammunition manufactured by Wolf |

COUNT TWENTY-ONE

[18 U.S.C. § 1956(h)]

[DEFENDANTS SANTILLAN and SANTILLAN JR.]

A.   OBJECT OF THE CONSPIRACY

Beginning on or before March 2020, and continuing until on or about February 24, 2021, in Los Angeles, Orange, Riverside, San Bernardino, Santa Barbara, and Ventura Counties, within the Central District of California, and elsewhere, defendants MARCO ANTONIO SANTILLAN VALENCIA and MARCO SANTILLAN, JR., and others known and unknown to the Grand Jury, conspired with each other to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce with the intent to promote the carrying on of specified unlawful activity, namely, the unlawful distribution of controlled substances, knowing that the funds involved in those financial transactions represented the proceeds of some form of unlawful activity, and which funds were, in fact, the proceeds of a specified unlawful activity, namely, the unlawful distribution of controlled substances, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

B.   THE MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.   Defendant SANTILLAN would agree to obtain firearms, firearms accessories, ammunition, and other similar items in the United States to be transported to Mexico on behalf of members of the CJNG drug cartel.

2.   Using drug proceeds in the United States that had been provided by co-conspirators in Mexico to defendant SANTILLAN,

defendant SANTILLAN JR. and others would purchase firearms, firearms accessories, ammunition, and other similar items in the United States on behalf of defendant SANTILLAN to be transported to Mexico to promote the drug-trafficking activities of co-conspirators in Mexico.

3.   Defendant SANTILLAN JR. and others would transport firearms, firearms accessories, ammunition, and other similar items that had been purchased in the United States to Whittier, California, where defendant SANTILLAN would arrange for such items to be further transported to Mexico.

4.   Individuals acting on behalf of defendant SANTILLAN would pick up firearms, firearms accessories, ammunition, and other similar items in Whittier, California, and elsewhere, and transport those items to Mexico.

C.   OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates, defendants SANTILLAN and SANTILLAN JR., and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles, Orange, Riverside, San Bernardino, Santa Barbara, and Ventura Counties, within the Central District of California, and elsewhere, including, but not limited to, the following:

The Grand Jury incorporates the allegations in paragraphs 1 through 49 of Section C of Count One of this Indictment here.

COUNT TWENTY-TWO

[18 U.S.C. § 922(g)(1)]

[DEFENDANT SANTILLAN]

On or about January 20, 2021, in Los Angeles County, within the Central District of California, defendant MARCO ANTONIO SANTILLAN VALENCIA knowingly possessed ammunition, namely, approximately 20,000 rounds of Wolf 7.62x39mm caliber ammunition, in and affecting interstate and foreign commerce.

Defendant SANTILLAN possessed such ammunition knowing that he had previously been convicted of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1) Conspiracy to Import Merchandise Subject to Seizure, in violation of Title 18, United States Code, Sections 371 and 545, in the United States District Court for the Southern District of California, Case Number 3:93-cr-01275-T, on or about March 23, 1994; and

(2) Possession of a Stolen Vehicle, in violation of California Penal Code Section 496D(a), in the Superior Court of the State of California, County of Los Angeles, Case Number VA087241, on or about March 24, 2005.

COUNT TWENTY-THREE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT DIAZ]

On or about July 31, 2020, in San Bernardino County, within the Central District of California, defendant MICHAEL DIAZ knowingly possessed ammunition, namely, approximately 49,400 rounds of Wolf .223 Remington caliber ammunition, approximately 1,000 rounds of Armscor 300 Blackout caliber ammunition, and approximately 14,000 rounds of Giulio Fiocchi .223 Remington caliber ammunition, in and affecting interstate and foreign commerce.

Defendant DIAZ possessed such ammunition knowing that he had previously been convicted of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)    Possession for Sale of Cocaine, in violation of California Health & Safety Code Section 11351, in the Superior Court of California, County of Orange, Case Number 09CF0100, on or about January 20, 2009;

(2)    Sale or Transportation of Cocaine, in violation of California Health & Safety Code Section 11352(a), in the Superior Court of California, County of Orange, Case Number 09CF0100, on or about January 20, 2009;

(3)    Possession of Methamphetamine, in violation of California Health & Safety Code Section 11377(a), in the Superior Court of the State of California, County of Riverside, Case Number RIF153658, on or about October 30, 2009;

(4)    Possession for Cocaine, in violation of California Health & Safety Code Section 11350(a), in the Superior Court of the State of

California, County of Riverside, Case Number RIF10000155, on or about January 13, 2010;

(5)   Possession for Sale of Methamphetamine, in violation of California Health & Safety Code Section 11378, in the Superior Court of the State of California, County of Riverside, Case Number RIF10001274, on or about June 1, 2011;

(6)   Possession for Sale of Methamphetamine, in violation of California Health & Safety Code Section 11378, in the Superior Court of the State of California, County of Riverside, Case Number RIF1704011, on or about April 13, 2015;

(6)   Felon in Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court of the State of California, County of Riverside, Case Number RIF1704011, on or about April 13, 2015;

(8)   Possession of a Stolen Vehicle, in violation of California Penal Code Section 496D(a), in the Superior Court of the State of California, County of Riverside, Case Number RIF1704011, on or about November 6, 2017;

(9)   Felon in Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court of the State of California, County of Riverside, Case Number RIF1704011, on or about November 6, 2017; and

(10)   Possession of Methamphetamine, in violation of California Health & Safety Code Section 11370.1, in the Superior Court of the State of California, County of Riverside, Case Number RIF1704011, on or about November 6, 2017.

　　　　　　　　　　　FORFEITURE ALLEGATION ONE

[50 U.S.C. § 4819(d)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 50, United States Code, Section 4819(d), in the event of any defendant's conviction of the offense set forth in Count One of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following property:

(a) All right, title and interest in any and all property, real or personal, used or intended to be used, in any manner, to commit or facilitate such offense;

(b) All right, title and interest in any and all property, real or personal, constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of such offense;

(c) All right, title and interest in any and all property, real or personal, constituting an item or technology that is exported or intended to be exported in connection with such offense; and

(d) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 50, United States Code, Section 4819(d)(2), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a)

cannot be located upon the exercise of due diligence; (b) has been
transferred, sold to or deposited with a third party; (c) has been
placed beyond the jurisdiction of the court; (d) has been
substantially diminished in value; or (e) has been commingled with
other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Two through Twenty of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any such offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offense set forth in Count Twenty-One of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

FORFEITURE ALLEGATION FOUR

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in either of Counts Twenty-Two or Twenty-Three of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/

Foreperson

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

SHAWN J. NELSON
Assistant United States Attorney
Chief, International Narcotics, Money Laundering, and Racketeering Section

CHRISTOPHER C. KENDALL
Assistant United States Attorney
Deputy Chief, International Narcotics, Money Laundering, and Racketeering Section

BENEDETTO L. BALDING
Assistant United States Attorney
Deputy Chief, International Narcotics, Money Laundering, and Racketeering Section